IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE G. BENETATOS and CHOULOS, CHOULOS & WYLE, LLC, | Case No. C 06-06819 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket No. 31] |
| HELLENIC REPUBLIC, | |
| Defendant. | |

Currently before the Court is Defendant's 12(b)(1) Motion to Dismiss [Docket No. 31]. Plaintiffs have filed an opposition [Docket No. 36]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing.

**BACKGROUND**

During or about 1988, plaintiffs were retained in San Francisco by representatives of the Hellenic Republic, on behalf of the Hellenic Republic's wholly owned public hospital located in the Town of Kalamata, Province of Messinia, Greece. Plaintiffs were retained to protect the hospital's remainderman interest in real property located in San Francisco and Sausalito (the "property").

The property was originally owned by George Kappas, a native of the province of Messinia in Greece. He died in San Francisco in 1987. By his will, he left a life estate in the property to his daughter, Helena Galatolo, remainder to the Kalamata Hospital.

In 1990 and in 2001, Mrs. Galatolo filed claims in the Probate division of the San Francisco

Superior Court against the Hellenic Republic's Kalamata hospital. Her claims sought hundreds of thousands of dollars for payments she made for Kappas' estate taxes, fees, and other expenses on the property. The residue of the estate was depleted by such costs; hence, Mrs. Galatolo claimed that the taxes, fees and other expenses had to be shared between her as life beneficiary and the remainderman hospital.

During 1999-2005, plaintiffs sent more than 30 status reports and letters concerning the litigation and on December 15 and 20, 2001, defendant's representatives met with plaintiffs several times in San Francisco and informed plaintiffs that if they would continue to represent defendant in the lawsuit, defendant would pay all of plaintiffs' fees and costs. During 2001-2005, plaintiff Mr. Benetatos sent to Hellenic Republic representatives ten bills that included descriptions of the work done, the amount of time per task, and amount charged per task. The Hellenic Republic allegedly never disputed or repudiated any of the bills or otherwise indicated any objections or refusal to pay any of the bills. In October, 2005, the Consul General of Greece in San Francisco, Mrs. Polyxeni Stefanidou, terminated plaintiffs as attorneys for the Hellenic Republic.

Alleging that they have not been paid for their legal services, plaintiffs filed this lawsuit on November 2, 2006. On September 21, 2007, the Hellenic Republic filed its Answer. The present motion to dismiss was filed by the Hellenic Republic on April 18, 2008 arguing that this Court lacks subject matter jurisdiction over plaintiffs' claims.

## **RELEVANT STANDARDS**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a defendant may assert a defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). If the court

2

determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

On a motion to dismiss under Rule 12(b)(1), the Court must consider all material factual allegations in the complaint as true. *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1224 (9th Cir. 2007).

## **DISCUSSION**

The Hellenic Republic requests that this Court take judicial notice of the fact that it is a foreign sovereign, and argues that, as a sovereign state, it is immune from the jurisdiction of this Court pursuant to the Federal Sovereign Immunities Act ("FSIA"), codified at 28 U.S.C. § 1602 *et seq*. The FSIA provides in pertinent part:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States ***except as provided in sections 1605-1607*** of this chapter [28 USCS §§ 1605-1607].

28 U.S.C. § 1604.[1]  The FSIA provides the "sole basis" for obtaining jurisdiction over a foreign sovereign in the United States. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 611 (1992); *McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 586 (9th Cir. 1983) ("Congress has vested exclusive jurisdiction over suits against foreign state defendants in the FSIA").

After a defendant makes a prima facie case that it is a sovereign state and therefore subject to immunity under the FSIA, the burden shifts to the plaintiff to prove that an exception to the defendant's immunity applies under the FSIA. *Berdakin v. Consulado de La Republica de El Salvador*, 912 F. Supp. 458, 461 (C.D. Cal. 1995).

---

[1] Emphasis added.

Plaintiffs acknowledge that defendant is a foreign state, but argue that the 'commercial activity exception' to immunity applies in this case pursuant to 28 U.S.C. § 1605. Section 1605(a)(2) provides in pertinent part:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case…in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States…

28 U.S.C. § 1605(a)(2).

According to the FSIA, "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. 28 U.S.C. § 1603(d). A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States. 28 U.S.C. § 1603(e).

The Supreme Court has explained that when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). In determining whether a foreign sovereign's acts constitute "commercial activities," the question is not whether the foreign government is acting with a profit motive or with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in "trade and traffic or commerce." *Id.* Indeed, the FSIA itself defines "commercial

4

activity" by reference to the *nature* of the course of conduct or particular transaction or act, rather than by reference to its purpose. 28 U.S.C. § 1603(d).

While activities such as the issuance of regulations limiting foreign currency exchange is deemed to be a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party, *see Weltover, Inc.*, 504 U.S. at 614–615, activities such as engagement in ordinary business contracts, whether to buy army boots or even bullets, is a commercial activity, because private companies can similarly use sales contracts to acquire goods. *Id.*

Here, plaintiffs have alleged breach of contract by defendants for legal services rendered in connection with representing defendant in a real estate dispute in San Francisco and Sausalito. Retaining lawyers to handle a real estate dispute is clearly the type of activity by which private parties engages in "trade and traffic or commerce" and therefore constitutes a "commercial activity" for purposes of implicating the exception to sovereign immunity under the FSIA. *See Adler v. Federal Republic of Nig.*, 219 F.3d 869, 875 (9th Cir. 2000) (construing the commercial activity exception to the FSIA, the Ninth Circuit explained that "[a] contract for services is plainly commercial in nature" and therefore satisfied the commercial activity exception under the FSIA).

The second prong of the commercial activity exception, requires that the commercial activity carried on by the foreign state have substantial contact with the United States. 28 U.S.C. § 1603(e). In 1988, plaintiffs were allegedly requested by defendant's representative, the San Francisco Consul General Dimis Vasilakis, to represent defendant in a lawsuit in San Francisco Superior Court, *In the Matter of the Estate of George Kappas*, Case No. 24698. The property allegedly at issue in the lawsuit is in the State of California. On December 15 and 20, 2001, defendant's representatives met with plaintiffs several times in San Francisco and informed plaintiffs that if they would continue to

represent defendant in the lawsuit, defendant would pay all fees and costs of plaintiffs. Plaintiffs allegedly performed all of the acts, services, and conditions required to be performed in order to represent defendant in the lawsuit in the San Francisco Superior Court.

It is clear to the Court that the commercial activity allegedly carried on by defendant, the litigation of a real estate dispute, had substantial contact with the United States in virtue of the fact that the property, the lawsuit, and the attorneys retained to litigate the lawsuit were all in the United States. Thus, the second prong of the commercial activity exception to immunity has also been met in this case.

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the fact that defendant, Hellenic Republic (a/k/a Greece), is a foreign sovereign. However, for the reasons stated above, the Court finds that plaintiffs have established that an exception applies to the immunity otherwise afforded to defendant under the FSIA and the Court therefore has subject matter jurisdiction over the claims in this case.

Accordingly, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: 5/14/08

SAUNDRA BROWN ARMSTRONG
United States District Judge

6